FILED
SUPERIOR COURT
OF GUAM

2023 AUG 14 PM 5: 29

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| GOVERNMENT OF GUAM, MICHAEL J.B. BORJA, in his capacity as Director of Land Management,<br><br>Plaintiff,<br><br>and<br><br>GUAM WATERWORKS AUTHORITY, a Guam Public Corporation,<br><br>Plaintiff-Intervenor,<br><br>vs.<br><br>CORE TECH INTERNATIONAL CORPORATION, YOUNEX ENTERPRISES CORPORATION,<br><br>Defendants. | **CIVIL CASE NO. CV1198-18**<br><br>**DECISION AND ORDER RE CORE TECH INTERNATIONAL CORPORATION'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT AND GUAM WATERWORKS AUTHORITY'S SECOND MOTION FOR SUMMARY JUDGMENT** |
| CORE TECH INTERNATIONAL CORPORATION,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>GOVERNMENT OF GUAM, MICHAEL J.B. BORJA, in his capacity as Director of Land Management, and GUAM WATERWORKS AUTHORITY, a Guam Public Corporation,<br><br>Counterclaim Defendants. | |

ORIGINAL

The Court here considers two remaining dispositive motions: Core Tech International Corporation's ("Core Tech") Motion to Dismiss and Motion for Summary Judgment against Plaintiff-in-Intervention Guam Waterworks Authority ("GWA") and GWA's second Motion for Summary Judgment against Core Tech. Incorporating its Decision and Order issued on November 30, 2021, the Court generally determines that any interest in lots at issue here conveyed by the Government of Guam ("Gov. Guam") to GWA reverted according to the language of the conveyance document. Moreover, Gov. Guam also conveyed the same property to third parties, and title to the property eventually ended up in the hands of Core Tech upon Core Tech's reliance on Certificates of Title issued to Core Tech's predecessor. Core Tech was entitled to rely upon those Certificates of Title, and therefore its title is protected under Guam's Land Title Registration law. Finally, the Court determines that the law of the case doctrine does not preclude the findings made here.

## I. PROCEDURAL BACKGROUND

Gov. Guam commenced this action against Core Tech on December 17, 2018. Gov. Guam petitioned the Court to cancel and amend certain Certificates of Title issued to Core Tech and/or Younex Enterprises. On March 25, 2019, GWA moved to intervene, which the appearing parties did not oppose. GWA filed its Petition to Quiet Title on April 17, 2019.

The Court set a dispositive motion deadline of April 2, 2021. Stip. and Order (Jan. 12, 2021). Four motions were filed on or before that date: (1) Core Tech's Motion for Summary Judgment against Gov. Guam and the Department of Land Management (DLM), filed on March 31, 2021; (2) Core Tech's Motion to Dismiss and Motion for Summary Judgment against GWA, filed on April 2, 2021; (3) GWA's Motion for Summary Judgment, filed on April 2, 2021; and (4) Gov. Guam's Motion for Summary Judgment, filed on April 2, 2021.



ORIGINAL

To streamline its review of the pending motions, the Court opted to consider GWA and Gov. Guam's dispositive motions first. It disposed of those motions in its November 30, 2021 Decision and Order Re Gov. Guam and GWA's Motions for Summary Judgment and its September 9, 2022 Decision and Order Denying Core Tech's Motion for Summary Judgment against Gov. Guam and DLM.

The Court heard Core Tech's motion against GWA on December 17, 2021. Shortly after that hearing, GWA attempted to bring an interlocutory appeal. After the interlocutory appeal attempt was denied,[1] the parties engaged in two further rounds of supplemental briefing and a second oral argument on November 22, 2022.[2] The Court also permitted GWA to present a second Motion for Summary Judgment concerning its April 17, 2019 Petition to Quiet Title filed against Core Tech. *See* Order Granting Mot. Leave to File Summ. J. (Feb. 13, 2023).

The Court now disposes of Core Tech's motion against GWA and GWA's second motion against Core Tech.

## II. UNDISPUTED FACTS ESTABLISHED IN THE COURT'S NOVEMBER 30, 2021 DECISION AND ORDER

The Court restates the following relevant facts that it found to be undisputed in its November 30, 2021 Decision and Order:

1. In "November 15, 1945, Congress ... enacted the Guam Land Transfer Act, Public Law

---

[1] CVA22-001 (Order (May 27, 2022)).

[2] At the request of GWA's new counsel, the Court gave GWA leave to file a supplemental brief, which it filed on August 12, 2022. Core Tech also had an opportunity to respond to GWA's supplemental brief. Then, upon converting Core Tech's motion to dismiss to a motion for summary judgment, the Court permitted the parties to submit further briefs and statements of material facts on the statute of limitations issues. Order Converting Mot. Dismiss to Mot. Summ. J. and Permitting Further Briefing (Dec. 13, 2022). The parties' statements and briefs were filed in January and February 2023.



79-225, 59 Stat. 584, authorizing the Secretary of the Navy to transfer lands the military no longer needed to the Government of Guam." *United States v. Gov't of Guam*, No. CV 17-00113, 2018 WL 6729629, at *3 (D. Guam Dec. 21, 2018).

2. On August 1, 1950, the United States Congress enacted the Organic Act of Guam, which directed the transfer of "title to all property, real and personal, owned by the United States and employed by the naval government of Guam in the administration of the civil affairs of the inhabitants of Guam ... to the Government of Guam within ninety days" after enactment. 48 U.S.C. § 1421f(a).

3. The Organic Act also provided that any land "not reserved by the President of the United States within ninety days after" the enactment was to be transferred to the Government of Guam. *Id.* § 1421f(b).

4. On October 30, 1950, President Harry S. Truman issued Executive Order 10178, which indicated that the Naval Government of Guam quitclaimed certain land to the United States, including the land at issue in this case. Decl. Clark, Ex. A (Apr. 2, 2021) (Judgment on Declaration of Taking (Jul. 31, 1950)).

5. A Judgment on Declaration of Taking covering the subject land was recorded with the government as Doc. No. 20991 on August 4, 1950. *Id.*

6. On May 23, 1980, the United States executed a Grant of Easement on the property, by which it granted the Government of Guam ("Gov. Guam") "an easement for the construction, installation, operation, maintenance, repair, and replacement of a sewage pumping station, force main, outfall, sewer lines and other general utility facilities." *Id.*, Ex. E (Grant of Easement, Inst. No. 312261 (May 23, 1980)).

ORIGINAL

7. On the same day, the United States also executed a General Purpose Lease, which granted Gov. Guam a license to use the property "for the construction, installation, maintenance, operation, repair and replacement of a Wastewater Treatment Plant and sewer lines...." *Id.*, Ex. F (General Purpose Lease, Inst. No. 312261 (May 23, 1980)). The term of the lease was twenty-five years, and Gov. Guam had the option to extend for an additional twenty-five years. *Id.*

8. On October 4, 1994, the United States enacted the Guam Excess Lands Act ("GELA"), which identified additional land to be returned to Gov. Guam. Guam Excess Lands Act, Pub. L. No. 103-339, 108 Stat. 3116 (1994).

9. Under the terms of the GELA, the land transferred must be used for "public benefit use" and Gov. Guam must enact legislation which establishes a detailed plan for the public benefit use before transferring land. *Id.*

10. To effectuate the return of land identified in the GELA, Gov. Guam enacted Public Law 22-145. Guam Pub. L. 22-145 (Dec. 9, 1994). Public Law 22-145 provides that the identified land would be transferred to the Chamorro Land Trust Commission ("CLTC") and the CLTC would utilize the land for the benefit of all original landowners, their heirs, and others identified by Guam law. *Id.*

11. Public Law 22-145 excluded "land that is presently utilized for direct public purposes such [as] schools, power substations, easements, roadways, and essential to the public's safety, welfare, health and protection...." *Id.* Public Law 22-145 also excluded from the transfer those lands presently used for direct public purposes and essential to the public's safety, welfare, health and protection. *Id.*

ORIGINAL

12. On January 2, 1997, Gov. Guam enacted Public Law 23-141, which included additional guidance on its land use plan. Guam Pub. L. 23-141 (Dec. 23, 1996). Under Public Law 23-141, the land identified would be returned "to the original landowners or their heirs, administrators, executors or other legal representatives of the landowners' original estates." Guam Pub. L. 23-141:2.

13. Gov. Guam subsequently established the Guam Ancestral Lands Commission ("GALC") to effectuate the return of lands. *See* Guam Pub. L. 25-45 (June 9, 1999).

14. On July 23, 1997, Gov. Guam executed a Grant Deed which conveyed all of its property interest in all surface water and groundwater utility to GWA, including those interests in the easement and the license discussed *supra*. Decl. Clark, Ex. G (Grant Deed, Inst. No. 567559 (July 23, 1997)).

15. The Grant Deed cited Public Law 20-06:07, which provides that all surface waters and ground waters are public assets and that the first priority for utilization of any waters shall be for the use or resale of GWA. *Id.*

16. On July 26, 2002, the United States executed a Quitclaim Deed to the Government of Guam, which conveyed its right, title, and interest in 856.21 acres, more or less, of land located in the village of Dededo known as "Anderson Communications Annex No. 1 (AJKD)." Decl. Clark, Ex. H.

17. The July 26, 2002 Quitclaim Deed contained the following condition language:

GRANTOR conveys the Property to GRANTEE so long as GRANTEE uses the Property for public benefit use, as contemplated by the Guam Excess Lands Act, Public Law 103-339, 108 Stat. 3116 (1994). Should GRANTEE use the Property for other than such use, title to the Property shall revert to GRANTOR.

Decl. Clark, Ex. H (Quitclaim Deed, Inst. No. 660299 (Jul. 26, 2002)).

ORIGINAL

18. The July 26, 2002 Quitclaim Deed also conveyed the property subject to:

> **ALL** covenants, reservations, easements, leases, restrictions, and rights recorded or unrecorded, for public roads, highways, streets, railroads, power lines, telephone lines and equipment, pipelines, drainage, sewer and water maines and lines, public utilities and other rights of way, including but not limited to the specific easements, reservations, rights and covenants described herein, and to any facts which a physical inspection or accurate survey of the Property may disclose.

*Id.* (emphasis in original).

19. The July 26, 2002 Quitclaim Deed also conveyed the property subject to certain reservations. Specifically, it stated:

> GRANTOR reserves for itself, its successors and assigns, a perpetual non-exclusive easement over a portion of the property more particularly described in Map Drawing No. RE-95-02... attached hereto as Exhibit B as follows:
>
> 1. Parcel G-3, an access road to the beach area at the Naval Communications Station, Finegayan, Guam, in favor of the U.S. Department of the Navy.
> 2. Parcel A-2, a telephone line easement in favor of Government of Guam, Guam Telephone Authority ("GTA")...
> 3. Parcel D-1, a power line and guy wire easement in favor of Government of Guam, Guam Power Authority ("GPA")...
> 4. Parcel H, a 100-foot wide road easement in favor of Government of Guam, Department of Public Works ("DPW")...
> 5. Parcel I-1, a 100-foot wide road easement in favor of Government of Guam, Department of Public Works ("DPW")...
> 6. Parcel J, a 100-foot wide road easement to Building No. 50 in favor of Government of Guam, Department of Public Works ("DPW")...
> 7. Parcel K, a 100-foot wide road easement in favor of Government of Guam, Department of Public Works ("DPW")...
> 8. Parcel L-4, a 20-foot wide water line easement in favor of Government of Guam, Guam Waterworks Authority ("GWA [sic]")....
> 9. Parcel N, a telephone line easement in favor of Government of Guam, Guam Telephone Authority ("GTA")...

*Id.*

20. On August 29, 2002, Gov. Guam executed a Quitclaim Deed, which conveyed the property to GALC. The Quitclaim Deed contained the following language:

ORIGINAL

> GRANTOR conveys subject property to GRANTEE so long as GRANTEE uses the Property for public benefit use, as prescribed by the Guam Excess Lands Act, Public Law 103-339, 108 Stat. 3116 (1994), Guam Public Laws 22-145, 23-23, 23-141, and 25-45 (Chapter 80 of Title 21 G.C.A.) consistent in all respects also with the terms and conditions of the Quitclaim Deeds issued by the United States of America all recorded at the Department of Land Management on July 26, 2002, as Document No. 660299.

*Id.*, Ex. J (Quitclaim Deed, Inst. No. 661951 (Aug. 29, 2002)).

21. Four years later, on October 26, 2006, the GALC executed a Quitclaim Deed, which conveyed three lots of land to the Estate of ancestral landowner Jose Martinez Torres ("Torres Estate"), including Lot AL-002--a 252.23 acre lot, which contained Lot. No. 5039 and the unsurveyed portions of Estates 1540 and 2531. *Id.*, Ex. L (Quitclaim Deed (Oct. 6, 2006) (Instr. No. 744340)).

22. The Northern District Wastewater Treatment Plant (NDWWTP) is located on a portion of Lot AL-002. *See* GWA's Response to Core Tech's Statement of Undisputed Facts at 1 ¶ 1 (Mar. 29, 2023).

23. The October 26, 2006 Quitclaim Deed contained the following language:

> TO HAVE AND TO HOLD, GRANTOR conveys subject property to GRANTEE(S) so long as GRANTEE(S)' [sic] use the property for public benefit use, as prescribed by the Guam Excess Lands Act, U.S. Public Law 103–339, 108 Stat. 3116 (1994), Guam Public Laws 22–145, 23–23, 23–141, 25–45 (Chapter 80 of Title 21 G.C.A.), 25–178, 26–36 and 26–100.

*Id.*

24. On August 9, 2007 the Co-Administratrixes of the Estate of Jose Martinez Torres petitioned the Court in Probate Case No. PR0220-50, for an order confirming the sale of Lot AL-002 to Kil Yoo Yoon. *In the Matter of the Estate of Jose Martinez Torres*, PR0220-50 (Pet. (Aug. 9, 2007)). The Court granted the Petition and issued an Order Confirming Sale of Real Property on August 31, 2007. PR0220-50 (Order (Aug. 31,

2007)).

25. The Torres Estate subsequently executed a Warranty Deed, which conveyed Lot AL-002 to Kil Yoo Yoon. Decl. Williams, Ex. 7 (Mar. 31, 2021) (Warranty Deed, Inst. No. 761426 (Sept. 13, 2007)).

26. Yoon recorded a subdivision survey map of Lot AL-002 with DLM. Decl. Clark, Ex. M. (Subdivision Survey Map, Land Management No. 109FY2008, Inst. No. 782273 (Nov. 18, 2008)).

27. The Subdivision Survey Map ("Castro Map") created Lot No. 10184 based on Lot AL-002 and subdivided Lot 10184 into Lot Nos. 10184-1 through 10184-8 and Lots 10184-17 and 10184-R17. *Id.*

28. The Castro Map indicates that Lot 10184-7 corresponded with the location of the sewer treatment plant and states "NOT RETURNED TO LANDOWNER." *Id.*

29. On January 26, 2010, Yoon conveyed Lot 10184, as subdivided by the Castro Map, to Younex Enterprises Corporation by Warranty Deed. Decl. Williams, Ex. 8 (Warranty Deed, Inst. No. 801378 (Jan. 26, 2010)).

30. The Warranty Deed references the Castro Map in its description of the subdivisions. *Id.*

31. On February 3, 2010, Younex granted a mortgage titled "First Mortgage on Real Property with Power of Private Sale" to Military Mutual Aid Association ("MMAA"). Decl. Clark, Ex. P (Notice of Sale Under Mortgage, Inst. No. 877367 (Apr. 17, 2015)). The mortgage secured a debt of $100,000,000[3] and encumbered the subdivisions of Lots 10184 and 5039 owned by Younex. *Id.*

---

[3] The Court corrects herein the November 30 Decision and Order, which misstated this amount as $1,000,000.

32. On February 22, 2010, DLM Deputy Civil Registrar, Andrew Santos, issued Certificates of Title for Lots 10184-1, 10184-3, 10184-4, 10184-5, 10184-6, 10184-8, 10184-17, and 10184-R17 stating that Younex is the owner in fee simple. Decl. Williams, Ex. 9.

33. On December 11, 2014, Deputy Civil Registrar Santos issued Certificates of Title for Lots 10184-2 and 10184-7 stating that Younex is the owner in fee simple. *Id.*, Ex. 10.

34. The Certificate of Title for Lot 10184-7 states "(Subject to Sewer Treatment Plant)" under the memorial of estates, assessments, liens, charges, or encumbrances on the Lot. *Id.*

35. On March 26, 2014, MMAA assigned the mortgage to STX Heavy Industries Co., Ltd. *Id.*, Ex. 11 (Mortgagee's Deed, Inst. No. 872575 (May 4, 2015)).

36. On December 11, 2014, Younex executed a Warranty Deed, by which it conveyed Lot 10184 (and its subdivisions) to HL Corporation, Inc. Decl. Clark, Ex. Q (Warranty Deed, Inst. No. 872575 (Dec. 11, 2014)).

37. On December 31, 2014, STX Corp. assigned the mortgage to Ace Builders LLC. *Id.*

38. On April 16, 2015, Ace Builders LLC assigned the mortgage to Core Tech. *Id.*, Ex. T (Assignment of Mortgage and Loan Documents, Inst. No. 877277 (Apr. 16, 2015)).

39. On April 17, 2015, Core Tech filed a Notice of Sale Under Mortgage which stated that the Mortgagor (Younex) defaulted on its obligation to the Mortgagee (Core Tech) and the "Mortgage shall be foreclosed by Core Tech pursuant to the power of sale contained in the Mortgage by sale of the properties encumbered by such Mortgage to the highest bidder as public auction...." *Id.*, Ex. P (Notice of Sale Under Mortgage, Inst. No. 877367 (Apr. 17, 2015)).

ORIGINAL

40. A public foreclosure sale was held on May 4, 2015; Core Tech was the highest bidder, making a credit bid of $178,186,301.00. Decl. Williams, Ex. 11 (Mortgagee's Deed, Inst. No. 872575 (May 4, 2015)).

41. Also on May 4, 2015, Core Tech filed a Mortgagee's Deed, which stated "the Mortgagee... hereby TRANSFERS, SELLS, and, CONVEYS to ... [Core Tech], all right, title, and interests of ... [Younex] (the Mortgagor), and all the right, title, and interest of any party who has or may have an interest or claim in the Property...which is subject to the Mortgage." *Id.*

42. In March 2019, GWA began excavating a portion of Lot 10184 and removed Core Tech's fence that stood in between Lots 10184-6 and 10184-7. Decl. Bathan, ¶ 4 (May 3, 2021).

43. In April 2019, Core Tech discovered that GWA's "excavation and encroachment was on Lot 10184-6." *Id.* ¶ 5.

## III.   LEGAL DETERMINATIONS MADE IN THE NOVEMBER 30, 2021 DECISION AND ORDER

Based on the undisputed facts presented in the course of briefing on Gov. Guam's Motion for Summary Judgment and GWA's Motion for Summary Judgment, the Court made the following determinations in its November 30, 2021 Decision and Order: First, Core Tech holds an ownership interest vis a vis the transfer to HL Corp. and the Mortgagee's Deed it obtained at the foreclosure. Dec. & Order at 17-18 (Nov. 30, 2021) (hereafter Nov. 30 Dec. & Order). Second, the Castro Map creates no property interests for Gov. Guam or GWA. *Id.* at 18-19. Third, Core Tech did not violate the statute of limitations for its inverse condemnation claims. *Id.* at 19-21. Fourth, GWA has a water line easement on Parcel L-4. *Id.* at 26. Fifth, the license

that the U.S. granted GWA was extinguished upon the July 26, 2002 conveyance from the U.S. to Gov. Guam, and the 1980 General Purpose Lease does not establish GWA's superior title. *Id.* at 27-28. Sixth, Core Tech failed to allege a taking by Gov. Guam. *Id.* at 28-29. Seventh, Gov. Guam failed to establish adverse possession under either 7 GCA §§ 11029 or 11210. *Id.* at 29-30. Eighth, the United States is not a necessary nor indispensable party. *Id.* at 30-36.

Additionally, the Court found an issue of fact as to whether GWA has a right to use and occupy Lot 10184-7 and whether a taking has occurred. *Id.* at 22-25, 28.

## IV.     ADDITIONAL UNDISPUTED FACTS

The following facts are undisputed based on the additional record established before the Court.

44. GWA retains a property interest to use the land for water lines subject to the water line easement. *Id.* at 26-27.

45. The 1980 General Purpose Lease does not grant GWA superior title to Core Tech. *Id.* at 28.

46. The 1980 General Purpose Lease granted a license to Gov. Guam. *Id.* at 27.

47. The July 2002 Deed from the U.S. to Gov. Guam extinguished the license. *Id.* at 27-28.

48. Attached to the 1980 General Purpose Lease is a map identifying Parcels 3 and 4. Decl. Bordallo, Ex. 1 (Feb. 14, 2023).

49. Attached to the 1980 General Purpose Lease is a map that states it is the "Real Estate Requirements for the Northern District Sewerage System Utility Easements for: Waste Water Treatment Plan and Sewerage Pumping Station." Decl. Clark, Ex. F, Ex. A (legible copy resubmitted as Decl. Bordallo, Ex. 1). That map shows "'Lease' Parcels 3

and 4" and mentions a Wastewater Treatment Plant on Parcel 4. Decl. Bordallo, Ex. 1 at 2.

50. Exhibit A attached to the 1980 General Purpose Lease identifies an existing 20-foot wide waterline easement which the Lease explicitly excludes. Decl. Clark, Ex. F at 1.

51. The 1980 General Purpose Lease is labeled N6274280RP00020. *Id.*, Ex. F at 2.

52. The 1980 Grant of Easement is labeled N6274280RP00019. Decl. Williams, Ex. 1 at 2.

53. Attached to the 1980 Grant of Easement is an exhibit that states it is the "Northern District Sewerage System Real Estate Requirements for the Government of Guam." Decl. Bordallo, Ex. 2 (Ex. A to Instr. No. 312261).

54. The 1980 Grant of Easement describes Sewer Line A, Sewer Line B, Sewer Line C, Parcel D ("Force Main"), Parcel E ("Outfall"), Parcel E-1, Parcel 1, and Parcel 2 (Sewage Pumping Station). *Id.*

55. The 1997 Grant Deed from Gov. Guam to GWA conveyed, among other interests: "195. **Easement, Northern District Sewage Treatment Plant, Harmon, USAF Grant of Easement**, as shown in Map/Instrument Drawing Numbers 312261 and 312262, License Number N6274280RP00019 . . . ." Decl. Clark, Ex. G at 32.

56. In addition to the specific conveyances of property, the 1997 Grant Deed generally conveyed all "estate, rights, title, interest, powers, property, claim and demand of [the Government], it successors and assigns . . . to hold the same in fee simple absolute forever:" 1) "Easements .. together with all land connecting and running with any water or sewer systems, surface or subsurface, wherever situated," 2) "Water Resources" including all "water or sewer resources" together with "any leases, options, improvements, buildings, facilities, easements, or rights-of-ways thereon, and any rights

ORIGINAL

of reservation, intending said rights, Powers and interests to be superior above all others,"

3) "Northern Guam Lenses Aquifers," and 4) "Public Lands" for "all government lands

reserved for the future use of the government of Guam, wherever situated." *Id.*, Ex. G at

35-36.

57. Gov. Guam conveyed all of its property interest in all surface and groundwater utilities to

GWA with the 1997 Grant Deed. Nov. 30 Dec. & Order at 30; Statement of Undisputed

Material Facts at 10 ¶ 10 (Mar. 15, 2023).

58. The 1997 Grant Deed does not mention the 1980 General Purpose Lease. *See generally*

Decl. Clark, Ex. G.

59. The 1997 Grant Deed states: "All parties to [the 1997 Grant Deed] agree that the 'real

estate requirement survey map(s)' will be completed within five years from the date of

the filing of this Grant Deed, unless an extension is granted by the Director of the

Department of Land Management and the Governor of Guam. All lots for which the 'real

estate requirement map(s)' has not been completed shall revert automatically to the

Government of Guam." *Id.*, Ex. G at 37-38.

60. Gov. Guam admits it does not claim a property interest in the NDWWTP. Nov. 30 Dec

& Order at 30; Statement of Undisputed Material Facts at 14 ¶ 28.[4]

61. On November 26, 2001, the Governor of Guam received a letter from DLM that

requested the Governor approve a time extension until 2009 for GWA to complete

---

[4] Core Tech misnumbered its March 15, 2023 Statement of Material Facts after Undisputed Fact
No. 20 on page 12. The Court here references what is labeled Core Tech Undisputed Fact No.
28, which referenced GWA's Undisputed Fact No. 29 in GWA's Statement of Undisputed
Material Facts filed on February 14, 2023.

surveys of parcels transferred under the 1997 Grant Deed. Decl. Bordallo, Ex. 4. The document was not recorded. The Acting Governor approved the request. *Id.*

62. On July 28, 2017, a time extension for the deadline to complete real estate requirement survey maps under the 1997 Grant Deed and an assignment was recorded as Instrument No. 910396. *Id.*, Ex. 5; *see also id.*, Ex. 6 (correcting lot numbers). The time to complete the real estate requirement survey maps was extended until June 1, 2027. *Id.*, Ex. 5 at 1.

63. On July 24, 2009, Gov. Guam filed a Complaint to Quiet Title against Yoon for his adverse claims and the purported acquisition of Lot AL-002 from the Torres Estate. *Government of Guam v. Torres, et al.*, CV1124-09 (Compl. (July 24, 2009)); *see also* Dec. and Order Denying Core Tech Int'l Corp.'s Mot. Summ. J. at 2 (Sep. 9, 2022).

64. The court in CV1124-09 dismissed Gov. Guam's claims in part because Gov. Guam admitted that Yoon was a bona fide purchaser of Lot AL-002. CV1124-09 (Dec. and Order at 14 (July 29, 2010)); *see also* Dec. and Order Denying Core Tech Int'l Corp.'s Mot. Summ. J. at 2.

65. Core Tech holds an ownership interest in AL-002 vis a vis the transfer to HL Corporation and the Mortgagee's Deed. Nov. 30 Dec. & Order at 17.

66. From July 1997 to the present, GWA has openly and continuously operated and asserted ownership over the NDWWTP (and Lots 10193 and 10194). GWA Pet. Quiet Title ¶ 18 (Apr. 17, 2019); Core Tech's Second Am. Countercls. ¶ 7 (July 6, 2020).

67. Core Tech does not seek to remove the Plant; rather, it seeks compensation for the government's use of the land. Nov. 30 Dec. & Order at 36; Statement of Undisputed Material Facts at 12 ¶ 19.

ORIGINAL

68. GWA has never reconveyed the plant property back to Gov. Guam. Decl. Bordallo ¶ 6.

69. Gov. Guam has represented that "Between the two defendants [GWA and Gov. Guam], the Government of Guam holds no title to the parcels Core Tech claims upon, having transferred its ownership interest to GWA in 1997." Gov. Guam Mot. Summ. J. § V (Apr. 2, 2021).

70. GWA recorded a retracement survey for Parcels 3 & 4 on February 26, 2016, by Instrument No. 889242. Decl. Jacob, Ex. A (Feb. 13, 2023).

71. A land registration survey map, Instrument No. 908387, indicates Lot Nos. 10193 and 10194 are formerly Parcel 3 and Parcel 4. It references Instrument No. 889242. GWA Pet., Ex. E.

72. The District Court of Guam considers GWA to own five wastewater treatment plans on Guam, including the NDWWTP. Decl. Jacob, Exs. 5-6 (Feb. 14, 2023) (attaching federal court orders).

## V.    ANALYSIS

### A. Summary Judgment Standard

Guam Rule of Civil Procedure 56, which governs summary judgment motions, was amended in July 2022. Core Tech filed its Motion to Dismiss and for Summary Judgment prior to the amendment, however, the Court utilizes the amended version of the Rule in analyzing Core Tech's motion as well as GWA's motion.

Summary judgment may be granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Guam R. Civ. P. 56(a). The pleadings and the substantive law determine the "materiality" of particular facts. *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 248 (1986). Materials in the record must

ORIGINAL

support the facts, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations [], admissions, interrogatory answers, or other materials. GRCP 56(c)(1)(A). The Court must view the evidence and draw inferences in the light most favorable to the non-movant. *Edwards v. Pacific Fin. Corp.*, 2000 Guam 27 ¶ 7.

## B. GWA's Petition does not violate the applicable statute of limitations.

Core Tech claims that dismissal[5] of GWA's claim to the property is appropriate under two possible applicable statutes of limitations: ten years under 7 GCA § 11201 or ten years under 7 GCA § 11202. Section 11201 limits the government from "su[ing] any person for or in respect to any real property, or the issue or profits thereof, by reason of the right or title of the government of Guam to the same, unless" the cause of action accrues within ten years before any action. Section 11202 provides: "No action can be brought for, or in respect to, real property by any person claiming under letters patent, or grants from any government of this territory, unless the same might have been commenced by the government of Guam as herein specified, in case such patent had not been issued or grant made."

Section 11202 derives from section 316 of the California Code of Civil Procedure. In analyzing this provision, the Supreme Court of California explained,

> if the right of the people to maintain such an action is barred at the time the patent is issued, or the grant made, the right of the patentee or grantee is also barred. If, however, when the state patent is issued, or its grant made, not more than 5 of the 10-year limit prescribed in section 315 has run, the patentee or grantee can maintain an action to recover the property, or the mesne profits thereof, at any time within

other applicable limitations periods. *Willhoit v. Tubbs*, 23 P. 386, 388 (Cal. 1890).

---

[5] The Court converted Core Tech's Motion to Dismiss to a Motion for Summary Judgment. *See* Order Converting Mot. Dismiss to Mot. Summ. J. and Permitting Further Briefing.

In response to Core Tech's limitations period arguments, GWA cites the long-standing principle under California law that quiet title limitations periods fail to bind entities in possession of land. *Tannhauser v. Adams*, 31 Cal.2d 169, 175 (1947). As recently explained by the California Court of Appeals, the rationale for the rule is "an unwillingness to convert a statute of limitations into a statute that works a forfeiture of property rights on the person holding the most obvious and important property right--namely, possession." *Salazar v. Thomas*, 186 Cal. Rptr. 3d 689, 695 (Ct. App. 2015).

GWA's possession of the NDWWTP is an undisputed fact, evidenced by Core Tech's Second Amended Counterclaim: "On or about May 23, 1980, and continuing until now, Counterclaim-Defendants have used and occupied a portion of Lot AL-002 for the construction of a wastewater treatment plant and infrastructure necessary to its operation." Core Tech Int'l Corp.'s Second Am. Answer; Countercls. ¶ 7 (July 6, 2020). In addition, Core Tech has not alleged its own possession of the property, rendering the question of GWA's exclusive possession undisputed. *See* Statement of Material Facts (Jan. 12, 2023).

Core Tech posits, instead, that the Court has ruled that the Government has not had exclusive possession. Core Tech cites the following passage from the November 30 Decision and Order: "the Court finds that the government has not established that it has occupied and possessed the property under a written instrument." Nov. 30 Dec. & Order at 30. Core Tech extracts this passage out of its full context. The discussion was relative to Gov. Guam's argument that it adversely possesses the property. The Court noted Gov. Guam's admission that it does not claim any interest in the property and that GWA (not the Gov. Guam) has been operating the NDWWTP since 1997. Nowhere in the Court's analysis was a finding that any

ORIGINAL

other entity besides GWA or the Gov. Guam--such as Core Tech--have been in possession of the property.

There now being no question that GWA has possessed the property since 1997, and Core Tech has not, the statute of limitations has not begun to run on a quiet title action. Summary judgment on Core Tech's statute of limitations arguments is therefore denied.

## C. The Nature of GWA's Title

### 1. The 1997 Grant Deed includes the plant property.

The Court now turns to the substantive arguments concerning GWA's title. The Court first addresses Core Tech's argument that the 1997 Grant Deed conveys an easement to the NDWWTP, but not the Plant property itself.

The interpretation of the 1997 Grant Deed is a matter of law. *Aflague v. Moylan*, 2020 Guam 18 ¶ 9. Deeds are construed under the same principles employed for the interpretation of contracts. 19 GCA § 40401; *Estate of Gogue v. Pangelinan*, 2020 Guam 26 ¶ 21. Thus, the Court considers the intention of the parties based on the whole of the writing alone, if possible. 18 GCA §§ 87104-87105, 87107. A contract, or grant, may also be explained "by reference to the circumstances under which it was made, and the matter to which it relates." 18 GCA § 87113.

Generally, Guam law directs that grants are interpreted in favor of the grantee. 19 GCA § 40404. Also, if the grantor is a public body and the grantee is a private party, the grant is interpreted in favor of the grantor. *Id.* This provision, which derives from California law, is rooted in well-established legal principles that grants by the government are to be strictly construed in favor of the government. *See Red Mountain, LLC v. Fallbrook Pub. Utility Dist.*, 48 Cal. Rptr. 3d 875, 885, 887 (Cal. App. 2006) (analyzing California counterpart to section 40404).

As stated by the California Supreme Court, "in construing this grant the state is entitled to the benefit of certain well-settled canons of construction that pertain to grants by the state to private persons or corporations,—as, for instance, that, if there is any ambiguity or uncertainty in the act, that interpretation must be put upon it which is most favorable to the state." *City of Oakland v. Oakland Water-Front Co.*, 50 P. 277, 282 (Cal. 1897).

The relevant provision of the 1997 Grant Deed states: "195. **Easement, Northern District Sewage Treatment Plant, Harmon, USAF Grant of Easement**, as shown in Map/Instrument Drawing Numbers 312261 and 312262, License Number N6274280RP00019 . . . ." Decl. Clark, Ex. G at 32. On its own, this sentence seems unclear as to whether the mention of the "**Northern District Sewage Treatment Plant, Harmon**" following "**Easement**" is intended to be a description of the location of that Easement, or a conveyance of the NDWWTP in addition to the conveyance of the Easement existing at the property. Core Tech emphasizes that while License Number N6274280RP00019—related to the 1980 Easement—is listed, the separate License Number (N6274280RP00020) for the 1980 Lease of the NDWWTP property is not mentioned. Core Tech claims this means only the Easement was conveyed and the mention of the NDWWTP is a reference point for the Easement's location. To the contrary, GWA points to #195's mention of Drawing Number 312262, which is the drawing containing the NDWWTP (as well as other parcels). The Court finds that #195 on its own, with its omission of License Number N6274280RP00020 and the phrasing of the first two parts of the description, does not conclusively signify that the NDWWTP was being conveyed.

Beyond the language within #195, the Court must also examine the entirety of the document. This is one property of 205 properties consisting of pump stations, lots, and sewage treatment plants. The Court found eight other listings of sewage treatment plants: #4, 128, 144,



149, 161, 163, 188, and 189. All other sewage treatment plants contain lot numbers and area sizes, but strangely, #195 does not specify a lot number or lot size. Moreover, the omission of the lot size occurs with only one other listing.[6]

The Court also notes the extent of detail in this property listing. Almost all other item numbers contain an individual item, such as a well, plant, reservoir, or pump station. The Court does not see that other numbered listings combine properties or interests the way that #195 purportedly combines an easement and a plant into one listing.

The wording of #195 and the omissions noted above are strong evidence indicating that the NDWWTP was not properly listed as a property to be conveyed. Nonetheless, the Court is persuaded that the document is, at best, ambiguous. Taking guidance from section 40404, the Court construes the unclear provision in favor of the Government, even if the grantee of the 1997 Grant Deed is a government entity. The long-established principles to construe grants in favor of the Government, in this case, are strongly influenced by the underlying purpose of the 1997 Grant Deed, which was to transfer water-related resources to the specific government agency in charge of managing those resources. The Court finds that it must construe the document to favor a transfer of the NDWWTP—and not just the Easement—to GWA.[7]

---

[6] "**196. Portion of the Waterline Installed at the Start of Tarague Beach**, behind Oscar's Beach Bar up to the area next to Tarague Cave or the beginning of the Government of Guam property where the water meter is installed, Jinapsan Private Beach, Lot No. 9994." Decl. Clark, Ex. G at 32.

[7] The Court briefly addresses GWA's argument that Core Tech should be prevented from claiming that the 1997 Grant Deed omits the Plant Property based on Core Tech's prior positions. GWA is generally correct. The doctrine of judicial estoppel prevents a party from asserting a position if the position is "clearly inconsistent" with a prior position taken, and the party derives an unfair advantage or imposes an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). In its pleadings, Core Tech

### 2. The Impact on GWA's title when Gov. Guam received title from the U.S.

Next, the Court considers the impact of Gov. Guam not being a titleholder in 1997 when it conveyed its interest to GWA. When Gov. Guam executed the 1997 Grant Deed, it remained a lessee of the federal government. Gov. Guam's receipt of title came four years later with the U.S.'s Quitclaim Deed.

Even though Gov. Guam did not hold title to the lot in 1997, when it later received title from the federal government, title passed to GWA per 21 GCA § 4203. That provision states: "Subsequently Acquired Title. Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors." 21 GCA § 4203. The Court determines that under section 4203, GWA acquired whatever title Gov. Guam received in 2001 from the federal government.

### 3. Gov. Guam granted fee simple determinable title.

Core Tech and GWA digress on the nature of the title that Gov. Guam passed in the 1997 Grant Deed. GWA points to the deed's statement that "the Government of Guam . . . does hereby grant, transfer, assign, and convey to the Guam Waterworks Authority . . . in *fee simple absolute*" and "forever" the listed properties. Decl. Williams, Ex. 3 at 2, 34 (emphasis added).

---

has admitted GWA's allegation that the 1997 Grant Deed conveyed title to the Plant Property to GWA. Pet. Quiet Title ¶ 9; Core Tech Int'l Corp. Answer ¶ 9 (Jan. 23, 2019); Core Tech Int'l Corp. Second Am. Answer; Countercl. ¶ 9. Core Tech's Motion for Summary Judgment made no mention of the 1997 Grant Deed, omitting the NDWWTP, and to the contrary, argued that the 1997 Grant Deed was unambiguous as part of its primary arguments, which focused on other issues and not the alleged lack of conveyance. Mot. Dismiss GWA's Pet. and Mot. Summ. J. at 8 (Apr. 2, 2021). Therefore, it is clearly inconsistent for Core Tech to claim now that the 1997 Grant Deed fails to convey property after agreeing to the opposite since the beginning of the case. Moreover, it would be unfair at this point—after discovery has ended and the major round of dispositive motions have been filed—for Core Tech to change its position.

ORIGINAL

In contrast, GWA claims that, despite the conveyance stating it was "absolute" and "forever," the 1997 Grant Deed added a condition: that real estate requirement survey maps be completed or else such lots "shall revert automatically to the Government of Guam." *Id.*, Ex. 3 at 38. According to Core Tech, this qualifies the conveyance of title as a fee simple defeasible or a fee simple with a condition precedent. GWA then responds that if it is a fee simple defeasible, it would be a fee simple defeasible with a condition subsequent.

One can get lost in the antediluvian property terms at this point. It boils down to figuring out which property estate titles apply to the present situation. In doing so, "[i]t is the rule that the object in construing a deed is to ascertain the intention of the grantor from words which have been employed and from surrounding circumstances," and not from any set of technical terms. *Mountain Brow Lodge No. 82, Indep. Ord. of Odd Fellows v. Toscano*, 64 Cal. Rptr. 816, 818 (Ct. App. 1967) (cited in *Ueda v. Bank of Guam*, 2005 Guam 23 ¶ 14); *Bank of Suisun v. Stark*, 39 P. 531, 533 (Cal. 1895).

An estate in fee simple or fee simple absolute means it is not defeasible or conditional. 21 GCA § 3102. The starting point, therefore, is whether Gov. Guam conveyed a defeasible or conditional fee – terms that have become interchangeable. *See, e.g., Ueda*, 2005 Guam 23 ¶ 14 (a defeasible fee is one subject to a condition).

The Court begins its analysis with Core Tech's proposition that the 1997 Grant Deed contained a condition precedent. With a condition precedent, title passes to the grantee upon the conditioned performance. 21 GCA § 4207; *see also Bank of Suisun*, 39 P. at 533 ("If land is conveyed upon a condition precedent, the title will not pass until the performance of the condition; but, if the condition is subsequent, the title passes at the time at which the deed is executed and delivered.").


ORIGINAL

Given the description of a condition precedent—that title is withheld pending performance--it is difficult to characterize the 1997 Grant Deed as containing one. In the 1997 Grant Deed, Gov. Guam describes that it does "hereby grant, transfer, assign, and convey . . . in fee simple absolute" the real property required by GWA. Decl. Williams, Ex. 3 at 2. This language provides a strong indication that Gov. Guam proposed an immediate conveyance. While the 1997 Grant Deed also states that lots for which real estate requirement maps have not been completed shall revert automatically, that provision does not indicate that title was withheld (that is, that the title was withheld on a condition precedent). It suggests the opposite: that title is vested with the possibility of a reversion upon the failure of GWA to complete the maps.

Having ruled out a condition precedent, the Court reviews the remaining potential categories of defeasible or conditional fees. *Ueda* explains a defeasible/conditional fee can further be categorized into a fee simple determinable or fee simple with a condition subsequent. If the limitation creates an estate in fee simple and provides that the estate shall automatically expire upon the occurrence of a stated event, it is a fee simple determinable. *Ueda*, 2005 Guam 23 ¶ 14 n.4 (citing Restatement (First) of Property § 44 (1936)). If the condition instead provides that upon the occurrence of a stated event, the conveyor or his successor in interest shall have the power to terminate the estate so created, then it is a fee simple subject to a condition subsequent. *Id.* ¶ 14 n.5 (citing Restatement (First) of Property § 45 (1936)). Under 21 GCA § 4206, a deed with a condition subsequent is effective upon conveyance, but the conveyance is defeated upon nonperformance. Moreover, with a condition subsequent, Guam law requires affirmative action by the original grantee: "the person otherwise entitled to hold under the grant must reconvey the property to the grantor or his successors, by grant, duly acknowledged for record." 21 GCA § 4206.


ORIGINAL

Notably, "there is a constructional preference in favor of an estate subject to condition subsequent." *Ueda*, 2005 Guam 23 ¶ 14. In making this declaration, the Guam Supreme Court cites a footnote in *Mountain Brow Lodge*, in which a California appellate court also noted that while under the circumstances in that case, there was a possibility that an estate was a fee simple determinable, it abided by the constructional preference. *Id.* The California Court of Appeal provides a more thorough explanation of the distinction between a fee simple determinable and a fee simple with a condition subsequent, and the constructional preference for the latter, in *McDougall v. Palo Alto Unified School Dist.*, 28 Cal. Rptr. 37 (Ct. App. 1963). In that case, the court examined whether there was sufficient language in a deed by a private person to a school district to qualify as a fee simple determinable rather than a fee simple with a condition subsequent.

> Both a fee simple determinable and a fee simple subject to condition subsequent involve divesting upon the occurrence of the stated event. . . . . '[t]he difference is a distinct one, and, in the case of a determinable fee which terminates upon the happening of the contingency, the estate is at an end without any further act on the part of the defendant; while in the case of a vested estate subject to defeasance upon condition broken—a condition subsequent—the defendant, upon the happening of the contingency, is entitled only to the right to terminate the estate, or a right of re-entry.'

*Id.* at 44-45. The court concluded that the deed in question was a fee simple determinable because it contained an expression of an automatic reversion of the interest once the property stopped being used for school purposes.

Like in *Ueda* and *Mountain Brow Lodge*, *McDougall* also acknowledges a constructional preference for a fee simple title with a condition subsequent. But a constructional preference is not the end of the inquiry. The circumstances within the deed should match a certain defeasible fee estate. For example, a fee simple with a condition subsequent contains a


ORIGINAL

provision that if a certain event occurs, the conveyor may enter and terminate the estate, also known as the right of re-entry. *Id.* at 45. The deed in *McDougall* did not contain an express right of re-entry, so the Court there determined that the actual circumstances overrode the constructional preference.

Nor does the 1997 Grant Deed here contain an express right of re-entry. Instead, the reversion was automatic, with no action by Gov. Guam being necessary to activate that reversion. In other words, the language of the 1997 Grant Deed more closely fits the definition of a fee simple determinable because the fee terminates on the happening of a contingency— here, the failure to perform the real estate requirements maps. Moreover, no language expresses that Gov. Guam had to take action to terminate the conveyance and re-enter the property.

In 1982, California law abolished fee simple determinable titles; now, all defeasible titles are construed as fee simple with a condition subsequent and contain a possibility of reverter. Cal. Civ. Code § 885.020. Guam, however, continues to recognize fee simple determinable with automatic reversion as a valid form of title. *See Ueda,* 2005 Guam 23 ¶ 14. Because the title conveyed in 1997 Grant Deed more closely fits the definition of a fee simple determinable rather than a condition subsequent, the Court determines GWA's title under the 1997 Grant Deed to be a fee simple determinable. Moreover, because a condition on title was imposed, the 1997 Grant Deed does not convey title in fee simple absolute despite stating the conveyance was in fee simple absolute. 21 GCA § 3102. A thorough review of the entire 1997 Deed confirms the full intent of Gov. Guam that an automatic reversion would occur, making the conveyed title as a fee simple determinable.

ORIGINAL

### 4. GWA was required to complete real estate survey map requirements and did not do so timely.

In the 1997 Grant Deed, Gov. Guam explicitly conveyed "only that area required by the Grantee" as indicated in "real estate requirement map(s)." Decl. Clark, Ex. G at 2. Gov. Guam conceded that GWA's "determination of its real estate requirements will be respected and deferred to." *Id.* at 38. Moreover, Gov. Guam and GWA agreed that the maps would be completed within five years, absent an extension. *Id.* at 37-38. "All lots for which the 'real estate requirement map(s)' has not been completed shall revert automatically to the Government of Guam." *Id.* at 38.

GWA contends that real estate requirement survey maps had already been drawn in 1980 and that its position on this issue must be deferred to per the 1997 Grant Deed. GWA points to the Grant Deed, which references "Map/Instrument Drawing Numbers 312261 and 312262, License Number N6274280RP00019 . . . ." *Id.* at 32. Instrument Number 312261 is the 1980 Grant of Easement from the United States to Gov. Guam and contains an attachment entitled "Northern District Sewerage System Real Estate Requirements." Decl. Bordallo, Ex. 2. Further, that attachment contains a map that outlines the NDWWTP. *Id.* GWA also claims that it eventually recorded maps reflecting the survey requirement in 2017 and retraced the same area corresponding to the maps from 1980.

In reading the 1997 Grant Deed plainly, however, the Court does not find any language that exempts the NDWWTP, or any of the other 205 properties from either the requirement that real estate requirements maps be drawn or from the statement that if maps were not completed, the properties would revert to Gov. Guam. Also, no language incorporates prior, existing maps drawn for different parties and purposes as qualifying for the mandatory "real estate requirement



ORIGINAL

map(s)." Moreover, there is no exemption noted for the NDWWTP due to existing maps in either of the extension requests. Preparing the new maps themselves in 2017 emphasizes the need to comply with the real estate requirement maps rather than demonstrating that the maps were unnecessary. Accordingly, based on the plain language of the 1997 Grant Deed, it was still necessary for GWA to have completed a real estate requirement map for the NDWWTP to prevent that property from reverting to Gov. Guam.

Next, the Court reviews whether the extensions save GWA's position. It is undisputed that the 1997 Grant Deed gave GWA five years to complete the real estate survey map requirements, and four years later, the Governor issued an unrecorded extension until 2009. It is also undisputed that another extension was obtained in 2017, allowing another ten years to complete the maps. There is nothing in the record, however, that shows any extension was granted between 2009 and 2017. In simple terms, when GWA failed to get an extension after 2009, the automatic reversion language of the 1997 Grant Deed activated.

### D. The Nature of Core Tech's Title

Having resolved the state of GWA's title, the Court now turns to the nature of Core Tech's title.

### 1. Core Tech may rely on the After-Acquired Title Doctrine.

The Court continues examining what happened after the automatic reversion of title under the 1997 Grant Deed. Core Tech claims that title returned to Gov. Guam, then passed onto GALC under Gov. Guam's 2006 Quitclaim Deed to GALC, then to the Torres Estate under GALC's 2006 Quitclaim Deed to the Torres Estate, then to Yoon under the Estate's conveyance to Yoon, and finally, to Younex via a Warranty Deed from Yoon. Core Tech now claims title

ORIGINAL

through Younex, which this Court discussed further in its November 30 Decision and Order. *See* Nov. 30 Dec. and Order at 16-18.

GWA, however, argues that the After-Acquired Title Doctrine bars Core Tech's alleged title based on the quitclaim deeds from Gov. Guam to the GALC, and from the GALC to the Torres Estate. As explained above, the doctrine is "where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, [and] the same passes by operation of law to the grantee, or his successors." 21 GCA § 4203. Citing *Camacho v. Perez*, 2017 Guam 16, GWA contends that the doctrine does not apply to quitclaim deeds, which "by its very nature only conveys what the grantor has." *Id.* ¶ 33 (citing *Taitano v. Lujan*, 2005 Guam 26 ¶ 48). GWA emphasizes *Camacho's* holding that "The after-acquired title doctrine is applicable if, and only if, the quitclaim instrument contains explicit language that the grantor is conveying a future interest to the grantee." 2017 Guam 16 ¶ 33.

In *Camacho*, Galo Camacho executed a common-form quitclaim deed to William Perez that said he "release[s], convey[s] and forever quitclaim[s]" certain property. *Id.* ¶ 3. When the United States returned portions of the property, Galo sued to quiet title. The Guam Supreme Court examined the language of the quitclaim deed, which contained no explicit language conveying a future interest. The court also noted the absence of the word "grant." *Id.* ¶ 34. Finally, the court expounded on the purpose and equitable nature of the doctrine itself: "Under the doctrine, a party is estopped from "validly conveying his interest . . . and then claiming that the prior conveyance meant nothing." *Id.* ¶ 23. The doctrine of subsequently-acquired title thus puts grantors on notice that a conveyance will be honored by the law even if the grantor changes

ORIGINAL

his mind after he receives the title he expected. *Id.* Because it is an estoppel doctrine, it is not inflexible but rather a "shield of the innocent." *Id.* ¶¶ 23, 35.

Both deeds at issue here are labeled "Quitclaim Deed." Decl. Clark, Exs. J, L. However, they both also contain the critical language missing from the quitclaim deed in *Camacho*-- "grant." First, in 2002, Gov. Guam recognized the policy to return excess federal and local government lands to the original landowners. *Id.*, Ex. J. Following that policy, Gov. Guam stated that it "does hereby *grant*, transfer, assign, and convey to the [GALC] . . . the real property interests" known as AJKD, and "quitclaims unto [GALC] and to is successor and assigns, all of its right, title and interest in all that certain real property described above." *Id.*, Ex. J at 2-3 (emphasis added). Second, shortly after Gov. Guam's 2002 Quitclaim Deed, GALC executed a Quitclaim Deed to the Torres Estate. *Id.*, Ex. L. GALC's Quitclaim Deed similarly recognized the legal requirements and policies to return excess federal properties to the original landowners. It then stated that it does "hereby GRANT, RELEASE AND FOREVER quitclaim unto the Estate(s) of Jose Martinez Torres, successors and assigns . . . ." *Id.*, Ex. L at 4. Moreover, GALC stated that it "hereby surrenders, releases and extinguishes all rights and interest in relation to the Ancestral Landowner(s)' claim to the portion of the property returned, thereby permanently extinguishing all rights and interest and claims to the property." *Id.*, Ex. L at 12.

Neither of these quitclaim deeds was a "form" quitclaim deed; they were executed in compliance with Guam law and policy to return excess federal land to the original landowners. Even if they do not contain an express statement that includes the conveyance of future interests, the language of the quitclaim deeds creates no doubt that the transfer of all of Gov. Guam and GALC's interests was permanent. If the purpose of the after-acquired title doctrine is to "shield the innocent," it appears improper, if not illegal under public laws returning excess federal law,

ORIGINAL

for Gov. Guam or an agency thereof to nullify the conveyance made to original landowners and their grantees.

Finally, the Court notes the further inequity of GWA's position given that Gov. Guam acknowledged Yoon as a bona fide purchaser, meaning that it admitted the interests conveyed to Yoon via the quitclaim deeds.

In essence, the quitclaim deeds here are unlike that examined in *Camacho* in that there was an intention by Gov. Guam and GALC to grant their interests in the property. Moreover, the equitable doctrine must stand to shield the grantee and those purchasing under the grantee.

## 2. Core Tech has protections under the Registration Act.

Further, concerning Core Tech's title, both parties debate the applicability of Guam's Land Title Registration Act, Chapter 29 of Title 21 of the Guam Code. Core Tech argues that because the land on which the NDWWTP sits is registered to Younex, from whose mortgage it foreclosed, its title is also protected. GWA contends that Core Tech is not a bona fide purchaser and, therefore, it is not entitled to protection.

The Guam Supreme Court has definitively ruled on the protections afforded by the Registration Act, also known as a Torrens system. It is described as a "system for registering real property titles by 'the use of certificates which conclusively show the state of the title at all times.'" *Unpingco v. Derry*, 2021 Guam 1 ¶ 11 (citing *Pelowski v. Taitano*, 2000 Guam 34 ¶ 30). Its intent is to "simplify transfers of real estate and to render titles safe and indefeasible," with proper registration making the title indefeasible. *Unpingco*, 2021 Guam 1 ¶¶ 11-12. The Registration Act codifies this intent: ". . . [T]he certificate of title to such registered owner shall be held in every court to be conclusive evidence that such registered owner has a good and valid title to the land, and for the estate or interest therein mentioned or described." 21 GCA § 29141;

ORIGINAL

*see also* 21 GCA § 29143 (a register of land is conclusive evidence that the person named therein is entitled to the land specified).

A certificate of title, in turn, ensures the property's marketability. *Unpingco,* 2021 Guam 1 ¶ 14. Accordingly,

> no person taking a transfer of registered land, or any estate or interest therein, or any charge upon the same, from the registered owner, shall be held to inquire into the circumstances under which, or the consideration for which, such owner or any previous registered owner was registered, **or be affected with notice, actual or constructive, of any unregistered trust, lien, claim, demand, or interest . . . .**

21 GCA § 29137 (emphasis added).

To avail of the protections of the Registration Law, a person must either be an initial registrant or a bona fide purchaser.[8] *Id.* ¶ 34. Generally, a bona fide purchaser must acquire title through payment of value, in good faith, and without actual or constructive notice of another's rights. *Id.* Core Tech and GWA diverge on whether Core Tech is a bona fide purchaser and whether it also needs to be.

According to GWA, the central issue is notice--Core Tech was aware that the NDWWTP existed on the property since at least 1980, and moreover, the Certificate of Title for Lot 10184-7 indicated "(subject to sewer treatment plant)." Decl. Williams, Ex. 10. GWA also points to the recording of the 1997 Grant Deed.

Core Tech claims that the existence of the NDWWTP does not preclude it from the Registration Act's protections based on other provisions in the Act. Core Tech's position has support in *Wells v. Lizama,* 396 F.2d 877 (9th Cir. 1968). In that case, a property purchaser had

---

[8] The Guam Supreme Court has reserved the issue whether other classes have protection under the Registration Law. *Pelowski,* 2000 Guam 34 n.4.

ORIGINAL

at least constructive notice that another possessed such land. The court, however, found that the traditional rules of notice differ in a Torrens system. Under a Torrens system,

> possession of registered land is not notice of any rights under an unregistered deed or contract for deed. That act abrogates the doctrine of constructive notice except as to matters noted on the certificate of title. . . . . [A] purchaser for value and in good faith may acquire a good title in reliance upon the certificate of title regardless of the fact that someone in actual possession of the land may present an adverse claim.

*Id.* at 881-82. Like in *Pelowski* and *Unpingco*, the *Wells* court relied on the essential purpose of the Registration Act: "to allow confident reliance upon record title under the Act." *Id.* at 883.

Based on *Wells*, GWA's possession of the property did not affect the issue of the title when Core Tech foreclosed and purchased the property because Younex held a certificate of title to Lot 10184-7 despite such possession. Moreover, if GWA's possession or claims to the property affected Younex's title, more other than "(subject to sewer treatment plant)" would have been noted on the Certificate; alternatively, a certificate would not have been issued. *See* 21 GCA § 29135 (title of registered owner holds subject to noted interests on certificate). Instead, DLM issued the certificate of title to Younex, which solidified the title's quality while noting the Plant's existence. The certificate of title afforded Younex protection under the Registration Act. Moreover, those purchasing the property from Younex had the right to rely on Younex's certificate without further inquiry, pursuant to section 29137.

Having determined that GWA's operation of the NDWWTP does not preclude Core Tech from receiving protection under the Registration Act, other relevant and undisputed facts relative to Core Tech's notice of GWA's interests are: (1) GWA received title under the 1997 Grant Deed which required survey maps to be done or be subject to automatic reversion; (2) there is no record of an extension granted after 2009 to complete the survey maps; (3) in 2010, Gov. Guam

ORIGINAL

recognized Yoon's status as a bona fide purchaser of the specific lot upon which the NDWWTP sits;[9] and (4) in 2014, Younex received a Certificate of Title indicating it held fee simple title "subject to sewer treatment plant." These facts confirm that Core Tech was entitled to rely on Younex's certificate, and subject to the plant, Core Tech is a bona fide purchaser of Younex's title as certified.

The Court also takes notice that Core Tech itself is not listed on the certificate of title, and so its own title is not registered. Had Core Tech been successful in obtaining a certificate of title when it acquired the property, it would have been protected under section 29133: "Every transfer of registered land shall be deemed to be registered . . . when the new certificate to the transferee shall have been marked as in the case of the first registration; and all other dealings shall be considered as registered when the memorial or notation shall have been entered in the register . . . ." While Core Tech may not be protected under section 29133, the other provisions of the Registration Act, plus *Wells* and *Unpingco*, and Gov. Guam's concession on Yoon's bona fide purchaser status in CV1124-09, make clear that Core Tech had a right to rely on the Certificate of Title and that GWA's possession does not deprive them of protection.

### E. Law of the Case

Finally, the Court addresses GWA's arguments that the Court's November 30 Decision and Order has formed the law of the case. More specifically, GWA contends that, based on the Guam Supreme Court's endorsement of the law of the case doctrine, the Court must follow its earlier holding that Gov. Guam transferred its interest to GWA.

"Under the 'law of the case' doctrine, a court is generally precluded from reconsidering

---

[9] *Gov't of Guam v. Torres, et al.*, CV1124-09 (Second Am. Compl. (Feb. 16, 2010)).

an issue that has already been decided by the same court, or a higher court in the identical case." *People v. Hualde*, 1999 Guam 3 ¶ 13. In *Hualde*, the Guam Supreme Court examined whether a trial court violated the doctrine when handling successive criminal suppression motions. After the first suppression motion, the trial court determined that the defendant had made a knowing, voluntary, and intelligent waiver of his *Miranda* rights. *Id.* ¶¶ 7-8. A year later, the trial court entertained a second suppression motion, filed not as a motion for reconsideration but as another motion for suppression. *Id.* ¶ 9. On the second motion, the trial court came to a decision contrary to the first—that the statements were not made voluntarily. *Id.* ¶ 10. The Guam Supreme Court found that the trial court erred in hearing the suppression motion a second time for several reasons: the People were prejudiced; a significant amount of time had passed after the first motion was decided; the defendant had not moved for reconsideration but were just allowed to refile on the same essential basis of a violation of their due process rights; the defendant had never suggested that the first decision was mistaken; there was no assertion that the first decision was erroneous; and finally, the trial court never sought to reconcile the two decisions. Upon review of those errors, the Guam Supreme Court derived a four-part test for when a court can depart from the law of the case: (1) where the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *Id.* ¶ 13.

This case is distinct from *Hualde* in one crucial aspect—the motions decided on November 30, 2021, and Core Tech's motion against GWA were filed contemporaneously and in compliance with the April 2, 2021 deadline to file dispositive motions. The Court, which has the

ORIGINAL

power to control the proceedings before it, had four substantive motions filed within three days of each other. In examining the issues presented, the Court determined to streamline its review by first hearing the motions presented by GWA and Gov. Guam. Its review culminated in the November 30 Decision and Order. Thereafter, the Court immediately turned its attention to Core Tech's motions and heard them on December 17, 2021.

The decision on Core Tech's motions is now being issued twenty-one months later, for good reason. First, GWA attempted to file an interlocutory appeal—a process that took six months to resolve. Second, GWA asked to file a supplemental brief, which this Court granted. Third, the Court granted the request to hear a second round of oral arguments on Core Tech's motion. Fourth, GWA asked to file a second dispositive motion, which this Court allowed. Seeing that GWA's issues were similar to Core Tech's, this Court has taken this single opportunity to address those issues.

In contrast, in *Hualde*, the Court heard the same issue more than a year after determining the suppression motion and did not explain why its first and second outcomes differed. The Court here is not engaged in two separate motion processes. This two-year-plus motion process has been an ongoing one, but not a reconsideration of any prior decision. The Court can now complete its review of the dispositive motions filed in April 2021, which includes the additional motion opportunity now presented by GWA.

In addition, the law of the case doctrine does not apply substantively. The portion of the November 30 D&O that GWA advocates as law of the case dealt with whether Gov. Guam had established adverse possession. The Court ruled: "It is undisupted that Gov. Guam conveyed all of its property interest in all surface and groundwater utilities to GWA with the July 23, 1997 Grant Deed." Nov. 30 Dec. & Order at 30. This ruling is not inconsistent with the additional


ORIGINAL

findings made by the Court in this Decision and Order. As discussed above, through the 1997 Grant Deed, Gov. Guam granted GWA a fee simple determinable—meaning that Gov. Guam granted a fee simple title to the property. Because of the automatic reversion, the title reverted and passed on to the GALC and down the chain of title. In other words, today's decision completes rather than contradicts the Court's earlier analysis.

## VI.    **CONCLUSION**

On Core Tech's Motion to Dismiss GWA's Petition based on the statute of limitations grounds, the Court DENIES summary judgment and finds that GWA filed a timely petition.

On Core Tech's Motion for Summary Judgment motion against GWA and GWA's second Motion for Summary Judgment, the Court determines that (1) the 1997 Grant Deed from Gov. Guam to GWA included the property upon which the NDWWTP sits; (2) GWA received title in 2001 when the federal government conveyed title to Gov. Guam; (3) Gov. Guam granted GWA fee simple determinable title in the 1996 Grant Deed; (4) the 1997 Grant Deed required GWA to complete real estate survey requirement maps, but GWA failed to complete the maps within an extended timeframe; (5) the After-Acquired Title Doctrine applies to Core Tech's predecessors, and thus, to Core Tech; (6) the Land Title Registration Act protects Core Tech; and (7) the Law of the Case Doctrine does not preclude the Court from reaching these conclusions. The Court GRANTS Core Tech's motion and DENIES GWA's motion relative to the above findings.

To discuss further proceedings in this matter, the Court sets a Status Hearing for

ORIGINAL

September 18, 2023, at 2:00 p.m.[10]

**SO ORDERED** this 14 August 2023.

_____
HON. ELYZE M. IRIARTE
**Judge, Superior Court of Guam**

Appearing Attorneys:

Civil Division, Office of the Attorney General, for the Government of Guam and the Director of
       Land Management

Theresa G. Rojas, Esq., Guam Waterworks Authority, Vincent Leon Guerrero, Esq., Law Office
       of Vincent Leon Guerrero, and Rodney Jacob, Esq., Calvo, Fisher & Jacob, for Guam
       Waterworks Authority

Vanessa L. Williams, Esq., Law Office of Vanessa L. Williams, for Core Tech International
       Corporation

---

[10] To appear for the hearing, open the Zoom app or go to https://guamcourts-org.zoom.us/ and
enter Meeting ID: 864 4387 2213 and Password: JEMI, or call 671-300-6703 to appear
telephonically.

ORIGINAL